IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 8:20-cv-60 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CATHARINE HARVEY, | ) | |
| JASEN HARVEY, and | ) | |
| HARVEYS TAX SERVICE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF</u>

The United States complains and alleges against Catharine Harvey, Jasen Harvey, and Harveys Tax Service (collectively, "Defendants") as follows:

1.     The United States brings this action to permanently enjoin Defendants, and all persons and entities in active concert or participation with Defendants, from directly or indirectly:

(a)     Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(b)     Filing, assisting in the filing of, or directing the filing of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(c)     Owning, managing, assisting, or working at a business that prepares or

assists in the preparation of tax returns, amended returns, or other tax-

related documents and forms, including any electronically submitted tax

returns or tax-related documents, for any entity or person other than

themselves;

(d)     Transferring, selling, or assigning their customer lists and/or other

customer information;

(e)     Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695,

and/or 6701; and

(f)     Engaging in conduct that substantially interferes with the proper

administration and enforcement of the tax laws.

2.     This action also seeks an order, pursuant to 26 U.S.C. § 7402(a), requiring

Defendants to disgorge to the United States the gross receipts they have obtained for the

preparation of federal tax returns making grossly incompetent, negligent, reckless, and/or

fraudulent claims.

3.     This action is authorized and requested by the Chief Counsel of the Internal

Revenue Service, a delegate of the Secretary of the Treasury of the United States, in accordance

with 26 U.S.C. § 7401 and is commenced at the direction of the Attorney General of the United

States.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C.

§§ 1340 and 1345.

5.      Venue is proper in this Court pursuant to 26 U.S.C. §§ 7407(a) and 7408(a), as well as 28 U.S.C. § 1391, because Defendants prepare tax returns within this judicial district and a substantial part of the events giving rise to these claims occurred within this judicial district.

## DEFENDANTS

6.      Catharine Harvey and Jasen Harvey are mother and son. They prepare tax returns in Plant City, FL, under the name Harveys Tax Service. The business's address is 809 E. Alsobrook St., Plant City, FL 33563.

7.      Defendants typically prepare at least 800 Form 1040 federal income tax returns per year. However, as described below, the actual number could be higher, as Defendants appear to be preparing returns without signing their names.

8.      As paid tax return preparers, Defendants Catharine Harvey and Jasen Harvey obtained from the IRS Preparer Tax Identification Numbers ("PTINs") of PXXXX4781 and PXXXX2147, respectively. They also obtained for Harveys Tax Service an Electronic Filing Information Number ("EFIN") of XX9624 and an Employer Identification Number ("EIN") of XX-XXX0437. Despite having the capability to file returns electronically under the EFIN assigned to Harveys Tax Service, Defendants do not always do so. Instead, Defendants file some of the returns they prepare by mail.

9.      As described below, Defendants have a documented history of making fraudulent claims as part of a scheme to claim millions of dollars in bogus refunds.

10.     To attract customers, Defendants frivolously assert that their scheme to defraud the Treasury is not only legitimate, but consistent with biblical teachings.

11.     A prime example of Defendants' promotion of frivolous positions is a so-called Knowledge Expansion Workshop that they co-sponsored. One of Defendants' customers

provided handouts from the seminar to the IRS. The handouts reflect that the seminar taught attendees about a "Master Scheme," "Occult Banking," and "How to respond to police." There are also outline sections entitled "There is no money," "You are the money," and "Defending what you have done."

12.     The customer's handwritten notes show that the seminar covered a number of debunked arguments frequently advanced by tax defiers and so-called sovereign citizens, including the "straw man" theory, which posits that the "government has created a separate or distinct entity, or 'straw man,' in place of the taxpayer and that the taxpayer is not responsible for the tax obligations of the 'straw man.'" *See* IRS Rev. Rul. 2005-21 (noting that this argument is frivolous and that using it to evade taxes will result in "vigorous enforcement action"). The FBI has also identified the straw man scheme as a fraud. *See Redemption/Strawman/Bond Fraud*, FBI, *available at* https://www.fbi.gov/scams-and-safety/common-fraud-schemes/redemption-strawman-bond-fraud.

13.     The handwritten notes also reflect that attendees were told to "stay out of the heathen court," to "take everything the judge has," and to a explore a veritable menu of frivolous arguments online, including by Googling "US vs USA." The top Google result for this search peddles the nonsensical beliefs that the "so-called government is an imposter posing and or masquerading as the original government," that the United States was "[c]reated by merchants, bankers, and their cohorts by acts of treason," and that President Lincoln was complicit in this scheme.

14.     Interspersed among these bizarre conspiracy theories are various biblical references, including to "BEAST OF REVELATION 12." The customer's notes also say: "God→Man→United States→Corporation."

4

15.     Beyond cloaking the positions in biblical terms, the seminar also offered a financial motivation. According to the handwritten notes, anyone who brings 10 people to a seminar will receive a "$500,000 bond."

16.     As discussed herein, when the IRS contacts Defendants' customers about fraudulent claims on the customers' tax returns, Defendants encourage them to not cooperate and to advance nonsensical arguments, including that the IRS is engaged in a scheme to embezzle funds, that the IRS cannot make tax adjustments because its employees are not judges, and that IRS personnel are not "human being[s]."

## OVERVIEW OF SCHEME

17.     At the heart of this case is a brazen scheme to deprive the United States Treasury of millions of dollars by inventing fictitious tax withholdings and using them to claim refunds.

18.     As a general matter, certain taxpayers have income taxes withheld at the source. A common example is employees who receive wages (reported on a Form W-2) and have the tax on that income withheld by their employers. These withholdings are required to be paid over to the IRS so that they can be credited against the taxpayers' liabilities.

19.     Under limited circumstances, individuals who are not employees but who earn other income also have taxes withheld.

20.     Certain categories of such "other income" are reported on a Form 1099-MISC, which is an information return filed by the individual or entity that made the payment (the payor). A copy is also furnished to the taxpayer who received the income (the payee).

21.     Taxpayers report their taxable income, as well as their tax due, annually on a Form 1040 income tax return. This includes any Form 1099-MISC income.

22.     Taxpayers who had less money withheld than they owe in tax must pay the difference to the Treasury. By contrast, taxpayers whose withholdings exceed their tax liabilities can obtain a refund.

23.     Defendants' scheme is to generate fraudulent refunds by claiming astronomical amounts of bogus tax withholdings on returns they prepare.

24.     In particular, Defendants have routinely invented fake income for their customers and made the nonsensical assertion that none of this income was ever paid to the customers, that all of it was instead withheld and paid over to the Treasury, that these withholdings exceed their customers' tax liabilities, and that the customers are therefore entitled to a refund. In other words, they assert that the Treasury has already received all of their customers' income and that the customers are therefore owed everything paid in excess of their liabilities.

25.     In some cases, Defendants merely assert on the return that a Form 1099-MISC has been filed with the IRS reflecting the claimed withholdings. In other instances, a fraudulent Form 1099-MISC is sent in hard copy to the IRS purporting to confirm the fraudulent information on the tax return.

26.     The reason for manually submitting the Form 1099-MISC in paper form is that the payor's electronic filing credentials are needed to submit a Form 1099-MISC electronically to the IRS. Such information is typically not available to the filer of a fictitious Form 1099-MISC.

27.     The claims of fictitious income result in higher tax liabilities for the customers, but because of the parallel claims of invented withholdings, the scheme, if successful, generates a refund that is substantially higher than the added tax liabilities. As one court described in a related context, this "alchemy . . . transmutes the nonexistent withheld taxes into massive

6

claimed refunds." *United States v. Knupp*, No. CIV. 1:09-CV-2724, 2010 WL 2245551, at *3

(N.D. Ga. May 14, 2010).

28.     Defendants' claims are absurd on their face. Form 1099-MISC issuers typically

do not withhold *any* taxes. Instead, they are required to withhold under limited circumstances,

such as when the recipient of Form 1099-MISC income does not provide a taxpayer

identification number. *See* 26 U.S.C. § 3406(a)(1).

29.     When such withholding does occur, it is called "backup withholding," and it is

capped at a certain percentage. Prior to 2018, the maximum amount for backup withholding was

28 percent. Beginning in 2018, the rate decreased to 24 percent.

30.     Indeed, the idea of 100 percent withholding is nonsensical, as it would mean that

taxpayers would be making interest-free loans to the Treasury of all of their income.

31.     Despite the outlandishness of these claims, they are a common scheme among

unscrupulous return preparers. *See, e.g.*, *United States v. Johnson*, 795 F.3d 840 (8th Cir. 2015);

*United States v. Morris*, No. 09-CV-02381-WYD-KMT, 2011 WL 587584 (D. Colo. Feb. 7,

2011); *United States v. McIntyre*, 715 F. Supp. 2d 1003 (C.D. Cal. 2010); *Knupp*, *supra*.

32.     Due to the prevalence of such bogus claims, the IRS has included Form 1099

fraud on its list of the Dirty Dozen tax scams. *See Falsified income, fake Forms 1099 part of IRS

'Dirty Dozen*,' IRS (Mar. 15, 2018), *available at* https://www.irs.gov/newsroom/falsified-

income-fake-forms-1099-part-of-irs-dirty-dozen.

33.     Although the IRS is often able to identify these fraudulent claims before paying

out refunds, it does not do so in all cases. As a result, the purpose of the scheme is to cause the

IRS to pay out fraudulent refunds.

## EXAMPLES OF SCHEME

34.     The following table contains a representative sample of Form 1040 income tax

returns Defendants prepared and filed that claim bogus withholdings. In all instances,

Defendants included false 1099-MISC income and made the fraudulent claim that all,

substantially all, or (sometimes) *an amount greater* than this fake income was withheld. For

purposes of this Complaint, the United States identifies Defendants' customers by their initials.

All customers referenced in the table below and the table in paragraph 51, *infra*, are also

identified by their full names in the exhibits attached to the concurrently filed motion for a

preliminary injunction.

| Customer | Filing date | Tax year | Type of income claimed | Amount of income claimed | Withholding claimed | Refund claimed |
|---|---|---|---|---|---|---|
| DR | 3/28/2017 | 2015 | Trust Credit Income | $463,426 | $463,426 | $281,749 |
| LY | 3/15/2017 | 2016 | Trust Credit Income | $468,865 | $470,126 | $266,125 |
| SL | 3/7/2017 | 2016 | Trust Credit Income | $303,840 | $303,840 | $200,335 |
| BA | 8/1/2016 | 2015 | Trust Credit Income | $380,161 | $380,161 | $228,804 |
| HB & BB | 6/24/2016 | 2015 | Other Income | $303,163 | $303,732 | $211,386 |
| EG & SG | 4/26/2016 | 2015 | Other Income | $277,500 | $280,819 | $196,336 |
| DL & PL | 4/13/2016 | 2015 | Other Income | $275,887 | $280,625 | $192,508 |
| CJ & IJ | 4/1/2016 | 2015 | Other Income | $255,602 | $255,000 | $185,473 |

35.     Catharine Harvey prepared the returns for LY and SL. Jasen Harvey prepared the

remainder of the returns listed on the chart.

36.     The return prepared for SL is a representative example of how this scheme works. On that return, Defendants reported $28,668 in what appears to be legitimate W-2 income, along with $303,840 in fake Form 1099-MISC income. Defendants also reported small amounts of taxable interest and other income. After taking into account the standard deduction and relevant exemptions, the return Defendants prepared reported taxable income of $312,893 and a tax liability of $106,396. Although this tax liability is higher than it would have been without the $303,840 in fake income, Defendants also reported that the entire $303,840 in fictitious income was withheld. This was in addition to the $2,891 in presumptively valid withholdings from the W-2 income. Defendants then claimed a refund of $200,335 (the sum of the presumptively valid W-2 withholdings and the bogus Form 1099-MISC withholdings, less the $106,396 in tax that was reported as due). Thus, the claimed refund was substantially higher than the extra tax liability resulting from the phony income and vastly exceeded the tax that SL actually paid.

37.     In each instance in the chart where Defendants claimed "Trust Credit Income," they also documented the bogus income on a Schedule C, which is used to report a profit or loss from a business. Defendants have not provided any explanation for what so-called "Trust Credit Income" is, and it is facially implausible that so many of Defendants' customers have the same mysterious form of income. Adding to the absurdity of the claims is the fact that, in each case, Defendants reported on the Schedule C that the customer earned huge sums of income without incurring any associated expenses.

38.     As noted in paragraph 25, *supra*, the IRS sometimes receives paper Forms 1099 purporting to validate the information reflected on the returns. The BA, HB & BB, EG & SG, DL & PL, and CJ & IJ returns are an example of this phenomenon. In each case, however, the

IRS determined that the Forms 1099-MISC are false, that they were never issued by the identified (or any) payor, and that the claimed withholdings were never paid over to the Treasury.

## CONTINUATION OF FRAUD AFTER IRS INTERVIEW

39.     Defendants' fraudulent preparation of tax returns has continued even after the IRS specifically advised them that there was no basis for the claims they were making.

40.     In June 2017, the IRS interviewed Jasen Harvey regarding his return preparation practices. Catharine Harvey was present for a portion of the interview.

41.     During the interview, Jasen Harvey was combative and repeatedly failed to offer a rational explanation for the withholding claims made on returns Defendants have filed for customers.

42.     The IRS specifically advised him during the interview that he was making false claims. In response, he stated that he relied on his customers to provide accurate information and that he had no right to override them. In reality, even if the information truly is being provided by the customers, Defendants' filing of the obviously incorrect returns is subject to penalty under 26 U.S.C. §§ 6694 and 6701.

43.     During the interview, the IRS also advised Jasen Harvey that the continued filing of bogus returns could subject Defendants to an injunction and to penalties.

44.     Nonetheless, Defendants have continued filing fraudulent returns even after the interview.

45.     Indeed, instead of stopping the preparation of fraudulent returns, Defendants shifted their scheme from Form 1099-MISC to Form 1099-A, as reflected below.

**VARIATION OF SCHEME**

46.     Following the IRS interview, Defendants changed their tactics and moved their fraud from Form 1099-MISC to 1099-A.

47.     A Form 1099-A is filed by a taxpayer who lends money in connection with a trade or business and, in full or partial satisfaction of a debt, acquires an interest in property that is security for the debt. It is also filed when the lender has reason to know that the property has been abandoned. As the IRS explains: "On Form 1099-A, the lender reports the amount of the debt owed (principal only) and the fair market value . . . of the secured property as of the date of the acquisition or abandonment of the property. . . . [T]he debtor . . . use[s] the amount realized to determine a gain or loss on the disposition of the property . . . ."

48.     Notably, IRS Form 1099-A *does not* include any section for reporting federal income tax withholding.

49.     Nonetheless, Defendants frequently claim huge Form 1099-A withholdings on behalf of their customers.

50.      The Form 1099-A withholding claims are based on the nonsensical contention that Defendants' customers have lent huge sums of money to large financial institutions and have allowed those institutions to withhold the loans as taxes.

51.     Examples of this scheme are included in the following table.

| Customer | Filing date | Tax year | Form 1099-A withholding claimed | Refund claimed |
|----------|-------------|----------|---------------------------------|----------------|
| GH | 3/6/2018 | 2016 | $78,896 | $77,789 |
| PA & DA | 1/8/2018 | 2015 | $547,300 | $547,300 |
| BM | 1/2/2018 | 2014 | $40,849 | $40,849 |
| MG | 12/28/2017 | 2014 | $80,904 | $80,904 |
| MM & MM | 12/27/2017 | 2014 | $637,936 | $637,936 |
| GW & GW | 12/27/2017 | 2014 | $241,233 | $241,233 |

| JS | 12/26/2017 | 2015 | $116,934 | $116,934 |
|---|---|---|---|---|
| HJ & DMJ | 12/14/2017 | 2014 | $113,135 | $113,135 |
| AM | 10/23/2017 | 2014 | $1,334,981 | $1,334,981 |
| AM | 10/23/2017 | 2015 | $1,131,562 | $1,131,562 |
| CA | 9/25/2017 | 2014 | $70,202 | $70,202 |
| CA | 9/25/2017 | 2015 | $93,833 | $93,833 |
| CA | 9/25/2017 | 2016 | $58,542 | $59,631 |
| CW | 9/13/2017 | 2016 | $157,537 | $157,472 |
| Jasen and Sara Harvey | 8/11/2017 | 2015 | $67,306 | $67,306 |
| Jasen and Sara Harvey | 8/11/2017 | 2016 | $77,996 | $77,996 |

52. All of the examples listed above except the CW return and the 2016 return for CA are amended tax returns. All of them were prepared by Jasen Harvey and filed in paper form. The ones for AM are amended Form 1120S corporate income tax returns. The remainder are amended Form 1040 individual income tax returns.

53. In each instance, Defendants included a narrative explanation for the amendment. Each statement used virtually identical language to make the frivolous argument that money that customers deposited into bank accounts represented tax withholdings to be returned to the named taxpayer.

54. For instance, as reflected above, Jasen Harvey attempted to perpetuate this scheme on two amended returns that he jointly filed with his wife, Sara Harvey. With each amended return, Jasen Harvey submitted a letter making the frivolous argument that he "agreed to lend" three financial institutions "the total sum of all deposits by allowing each to withhold the same that I have deposited over the previous year." Bizarrely, although he is a paid tax return preparer, Jasen Harvey indicated in the letters that he is "not a tax code expert."

12

55.    The IRS did not issue the requested refunds to Jasen and Sara Harvey, and in March 2018, the IRS informed them that the amended returns were frivolous. Only after they were caught did they back down. By letter dated August 9, 2018, Jasen Harvey advised the IRS that he and his wife "want to have a recension [sic] applied to our tax year 2014 and 2015 tax returns and reestablish the original filing. Also, rescind the corresponding 1099A's." Upon information and belief, it appears that the reference in this letter to the 2014 tax return was intended as a reference to the 2016 amended tax return.

56.    Another example of the 1099-A scheme is a tax year 2016 Form 1040 income tax return Defendants prepared for CW. In a complaint CW later filed with the IRS, she said that Jasen Harvey told her that "the terms of [TD Bank's] 'depository agreement'" allowed her "to claim these funds on my tax return."

57.    Defendants attempted to charge CW *$23,630*—or 15 percent of the bogus withholdings—for preparation of her return. This fee, in addition being preposterous, is evidence of Defendants' consciousness that their actions are fraudulent. Indeed, if the withholdings were legitimate, there would be no reason to make the return preparation fee a percentage of them.

58.    In late 2017, after the IRS discovered that the return was fraudulent, it assessed against CW her ill-gotten gains, along with penalties and interest.

59.    Afterward, Jasen Harvey presented CW with multiple documents making frivolous arguments.

60.    For instance, he gave her a "Verified Affidavit in the Truth" intended to be signed by her and sent to two IRS employees. The document states that "truth is sovereign" and that an "unrefuted affidavit stands as truth in commerce." It then cites *Marbury v. Madison*, 5

U.S. 137 (1803), and tells the IRS employees that they are lacking "Judicial credentials to show you have the authority to make a finding-of-fact." The document also accuses the IRS employees as follows: "I believe that you and the banker have conspired to embezzle funds." It then states a belief that one of the employees "is a pseudonym and not a human being designed to plunder and steal." It ends, nonsensically, with an offer to accept a liability in excess of $200,000 if the IRS in turn reduces that liability to $0.

61.     Jasen Harvey also presented CW with a letter to TD Bank, which had received an IRS levy to collect her liabilities. The letter accused the bank of "steal[ing] money" from her.

62.     Additionally, Jasen Harvey attempted to convince CW to make a $102,112.50 "donation" to an entity called Creative Resource Financial Recovery to manage her debt. The entity's paperwork references both a "Notice of Declaration of Independence" and the process of "Exiting out of the democracy and repatriating into the republic."

63.     CW eventually sought legal help and made a $100,000 demand against Jasen Harvey. In response, Jasen Harvey wrote a letter in July 2018 saying he "conditionally" agreed to pay CW $100,000, provided that she in turn pay him $300,000 in "pre[-]1964 gold or silver coin value."

64.     Defendants also perpetrated the Form 1099-A scheme on three returns for CA, who is the customer who provided the handouts from Defendants and their associates referenced in paragraph 11, *supra*. In her handwritten notes accompanying those handouts, CA reflects that the presenters claimed that the Form 1099-A scheme would allow them to "[g]et all your [bank] deposits back." Later, the handwritten notes reflect the presenters saying that the "[b]anks control the attorneys and the judges."

65. CA told the IRS that her understanding from the seminar was that whenever a person makes any deposit into a financial institution, the government deposits 10 times that amount, which is available to that person to claim as a tax refund. This frivolous and illogical position is an example of the baseless claims peddled by Defendants.

66. After the IRS contacted CA about the frivolous return, Defendants refused CA's request to prepare an amended return and discouraged her from cooperating with the IRS.

## EFFORTS TO MASK INVOLVEMENT

67. Section 6109 of the Internal Revenue Code requires return preparers to identify themselves on the returns they prepare for customers by including their PTIN on the returns. The IRS refers to return preparers who do not identify themselves as "ghost preparers."

68. Under 26 U.S.C. § 6695, the IRS can assess penalties against return preparers who do not comply with the requirements of 26 U.S.C. § 6109. In addition, a court can enjoin a return preparer who continually engages in conduct subject to penalty under § 6695 from preparing returns for others. *See* 26 U.S.C. § 7407.

69. On October 18, 2016, the IRS received an amended tax year 2015 Form 1040 income tax return in paper form from AB & JB. The return claims a bogus refund of $107,945 based on fictitious withholdings. It is accompanied by the following statement: "I received a 1099 Misc for Trust Credit Income after my tax return was submitted. I have added the 1099 Misc on a Sch C with Sch SE also forms and [sic] 8960 and 8962 to make my return accurate."

70. AB later informed the IRS that Catharine Harvey prepared the amended return, even though she failed to sign it.

71. On November 21, 2016, the IRS received an amended tax year 2015 Form 1040 income tax return in paper form from TF & KF. The return claims a bogus refund of $86,160

based on fictitious withholdings. Jasen Harvey placed his name on the amended return but did

not sign it. The amended return is accompanied by the following statement: "I received a 1099

Misc for Trust Credit Income after my tax return was submitted. I have added the 1099 Mic [sic]

on a Sch C with Sch SE form to make my return accurate."

72.     The IRS has identified numerous other amended Form 1040 income tax returns

that were not signed by any paid return preparer, that were submitted in paper form, that claim

"Trust Credit Income," and that are accompanied by a narrative statement that is virtually

identical to the ones reflected above. Upon information and belief, some or all of these could be

returns on which Defendants were ghost preparers.

73.     Additionally, Jasen Harvey has filed multiple tax returns using the wrong PTIN,

which is a violation of 26 U.S.C. § 6109.

## SCOPE OF SCHEME

74.     Defendants have carried out this scheme on a massive level. For instance, in

calendar year 2018 alone, Defendants filed more than 900 returns and claimed more than $6

million in refunds. In addition to the amended returns reflected in paragraph 51, *supra*, that

Defendants filed in 2018, eight additional returns that Defendants filed in 2018 claimed

withholdings and refunds in six-figure amounts. The first of these eight returns was filed in

January 2018, and the last was filed in December 2018.

75.     The IRS's Frivolous Return Program has identified at least 129 bogus returns

Defendants have filed between 2016 and 2018, with refund claims totaling more than $19.6

million. Although Jasen Harvey prepared the bulk of these returns, Catharine Harvey prepared at

least 10 of them. Given that not all fraudulent returns are captured by the Frivolous Return

Program, it is likely that the actual number of fraudulent returns and corresponding bogus refund

16

claims is substantially higher. Indeed, Defendants' efforts to mask their involvement in the preparation of certain returns make it difficult to measure the scope of the fraud.

76.     Though Defendants are located in Florida, they have a nationwide practice. In calendar year 2018, for example, they filed returns for individuals in at least 19 states.

## ATTEMPTS TO INTERCEPT REFUNDS

77.     As reflected in paragraph 74, *supra*, Defendants filed eight returns in calendar year 2018 that are not listed in paragraph 51 and that claim withholdings and corresponding refunds in six-figure amounts. Each of the eight returns requested that the refund be deposited into a JPMorgan Chase account ending in 9923.

78.     The JS, BM, GW & GW, and CA returns referenced in paragraph 51, *supra*, also request deposits into the JPMorgan Chase account ending in 9923.

79.     Upon information and belief, Defendants are requesting to have refunds deposited into this account in an attempt to intercept the funds—and take Defendants' fees— before the money ever makes it to the customers. For instance, CA told the IRS that the Harveys and one of their associates monitored the status of the refund check that she received for tax year 2016. Although Defendants requested a refund of $59,631 on CA's behalf, CA only received approximately $25,000 after various promoter fees and expenses.

## HARM TO THE UNITED STATES

80.     Defendants seek to induce the IRS to make erroneous refunds on the facially fraudulent premise that withholding in amounts at or near 100 percent of the income at issue has occurred. The United States is harmed because the IRS must continually devote its limited resources to detecting the returns prepared by Defendants and preventing the issuance of the bogus refunds their customers request.

17

81.     Beyond that, when refunds are issued in error, the IRS must also devote its scarce resources to assess additional tax liabilities for the ill-gotten gains and attempt to collect them. These collection efforts often prove difficult, extended, and ultimately unsuccessful, thereby resulting in permanent revenue losses to the United States.

82.     For instance, although Defendants prepare tax returns for customers across the country, there are numerous examples in the Tampa area alone of customers whose fraudulent returns erroneously resulted in refunds that have not yet been recouped.

83.     The Tampa Abusive Tax Avoidance Transaction ("ATAT") group of the IRS currently has at least eight cases in its inventory related to Defendants' customers.

84.     The ATAT group has made extensive efforts to collect these liabilities, including through levies. However, the ATAT group's experience has been that Defendants' customers move and spend the refund checks shortly after receiving them, leaving little to no funds available for collection.

85.     Additionally, the ATAT group has discovered that some of Defendants' customers have paid substantial percentages of their refunds to Defendants and/or Defendants' associates, which further depletes the collection potential.

86.     All told, despite the collection efforts, there are still substantial unpaid liabilities in those eight cases. Collectively, those liabilities exceed more than $1.8 million in taxes, penalties, and interest, all of which are directly traceable to Defendants' preparation of fraudulent tax returns.

87.     Although some of Defendants' customers may know that the refunds they are receiving are improper, as evidenced by the customers' rapid efforts to move and spend the funds, others are likely duped by Defendants' assurances that the conduct is lawful. Such

18

customers are harmed because they rely on Defendants to prepare proper tax returns. Instead, Defendants prepare inaccurate, frivolous, and dishonest tax returns and charge their customers substantial preparation fees. As a result, the customers may face large debts for taxes, penalties, and interest based on the erroneous refunds or be liable for frivolous filing penalties even when no refund is issued. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared by Defendants.

88.     Defendants' conduct also causes intangible harm to honest tax return preparers who unfairly lose business to Defendants due to Defendants' willingness to break the law and promise potential customers large refunds.

89.     Defendants' conduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws. Indeed, Defendants openly espouse meritless and blatantly false claims that have no basis in law or fact.

90.     Defendants will continue to harm the United States and the public and may be emboldened to increase such harm unless they are enjoined by this Court. Defendants filed more than 900 returns in calendar year 2019, and they are likely to continue preparing returns in the upcoming filing season. Given the seriousness and pervasiveness of their illegal conduct, those returns are likely to be false and fraudulent. An injunction will serve the public interest because it will stop Defendants' illegal conduct and the harm that it causes the United States and its citizens.

**COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. §§ 6694 AND 6695**

91.     The United States incorporates by reference the allegations contained in paragraphs 1 through 90.

92.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a person who is a tax return preparer from engaging in certain conduct or from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes the following:

    (a)     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund due to an unreasonable position that the preparer knew or should have known was unreasonable;

    (b)     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund due to willful or reckless conduct;

    (c)     Engaging in conduct subject to penalty under 26 U.S.C. § 6695(b), which penalizes a tax return preparer who fails to sign a return;

    (d)     Engaging in conduct subject to penalty under 26 U.S.C. § 6695(c), which penalizes a tax return preparer who fails to furnish their identifying number as required under 26 U.S.C. § 6109(a); and

    (e)     Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

93.     In order for a court to issue such an injunction, the court must find that:

20

(a)     The tax return preparer engaged in the prohibited conduct; and

(b)     Injunctive relief is appropriate to prevent the recurrence of such conduct.

94.     If a tax return preparer's conduct is continual or repeated and the court finds that a narrower injunction would not be sufficient to prevent the preparer's interference with the proper administration of the internal revenue laws, the court may permanently enjoin the person from acting as a tax return preparer. *See* 26 U.S.C. § 7407(b).

95.     Defendants have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(a) by preparing returns that overstate customers' refunds. As described above, Defendants have prepared returns that claim fictitious withholdings. Defendants have done so with the knowledge that the positions taken on the returns were unreasonable and lacked substantial authority. Defendants have thus engaged in conduct subject to penalty under 26 U.S.C. § 6694(a).

96.     Additionally, Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by willfully claiming fraudulent refunds and acting with a reckless and intentional disregard of rules and regulations.

97.     Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6695(b) by preparing tax returns without signing them.

98.     Jasen Harvey has also engaged in conduct subject to penalty under 26 U.S.C. § 6695(c) by filing tax returns with the wrong identifying information.

99.     Defendants' conduct substantially interferes with the administration of the internal revenue laws. Injunctive relief is necessary to prevent this misconduct because, absent an injunction, Defendants are likely to continue preparing false federal income tax returns.

100.    A narrower injunction would be insufficient to prevent Defendants' interference with the administration of the internal revenue laws. Defendants prepare facially fraudulent returns claiming enormous refunds. They have continued doing so despite a warning from the IRS. The harm resulting from this scheme includes the loss of revenue from fraudulently obtained refunds, as well as the efforts undertaken to recoup those amounts. Accordingly, only a permanent injunction is sufficient to prevent future harm. Each Defendant should be permanently enjoined from acting as a tax return preparer and from owning, operating, advising, or working in a business involved in tax preparation.

## COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. § 6701

101.    The United States incorporates by reference the allegations contained in paragraphs 1 through 90.

102.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701, which penalizes a person who aids or assists in the preparation of tax returns that the person knows will result in an understatement of tax liability.

103.    Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing income tax returns with claims of withholdings that they knew to be improper, false, and/or inflated.

104.    Defendants' repeated actions fall within 26 U.S.C. § 7408, and injunctive relief is appropriate to prevent a recurrence of this conduct.

**COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402 FOR UNLAWFUL**
**INTERFERENCE WITH ENFORCEMENT OF INTERNAL REVENUE LAWS**

105.    The United States incorporates by reference the allegations contained in

paragraphs 1 through 90.

106.    Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of

injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

107.    Defendants have repeatedly and continually engaged in conduct that interferes

substantially with the administration and enforcement of the internal revenue laws.

108.    If Defendants continue to act as tax return preparers, their conduct will result in

irreparable harm to the United States, and the United States has no adequate remedy at law.

109.    Defendants' conduct has caused and will continue to cause substantial tax losses

to the United States Treasury, much of which may be unrecoverable. Moreover, unless

Defendants are enjoined from preparing returns, the IRS will have to devote substantial and

unrecoverable time and resources to identifying and auditing Defendants' customers individually

to detect understated liabilities and overstated refund claims. The IRS will also have to continue

devoting resources to collecting erroneously issued refunds.

**COUNT IV: DISGORGEMENT UNDER 26 U.S.C. § 7402**

110.    The United States incorporates by reference the allegations contained in

paragraphs 1 through 90.

111.    Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of

injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

112.    Defendants' conduct substantially interferes with the enforcement of the internal

revenue laws. Specifically, Defendants have caused the United States to issue tax refunds to

23

individuals not entitled to receive them. Without Defendants' conduct, the United States would not have issued these bogus refunds.

113.    Defendants have unjustly profited from their misconduct at the expense of the United States. In particular, upon information and belief, they have frequently charged customers a percentage of the bogus refunds they have obtained.

114.    Defendants are not entitled to these ill-gotten gains. Using its broad authority under § 7402(a), the Court should enter an order requiring Defendants to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) they have obtained for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims.

## **RELIEF REQUESTED**

Plaintiff, the United States of America, respectfully prays for the following:

A.    That the Court find that Defendants have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and that injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct;

B.    That the Court find that Defendants have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. § 6701 and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

C.    That the Court find that Defendants have repeatedly and continually engaged in conduct that substantially interferes with the proper enforcement and administration of the internal revenue laws and that injunctive relief is appropriate under 26 U.S.C. § 7402(a) to prevent recurrence of that conduct;

D.      That the Court enter a permanent injunction prohibiting Defendants, any entity through which Defendants conduct business, and all persons and entities in active concert or participation with Defendants from directly or indirectly:

(1)     Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(2)     Filing, assisting in the filing of, or directing the filing of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(3)     Owning, managing, assisting, or working at a business that prepares or assists in the preparation of tax returns, amended returns, or other tax-related documents and forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(4)     Transferring, selling, or assigning their customer lists and/or other customer information;

(5)     Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and/or 6701; and

(6)     Engaging in conduct that substantially interferes with the proper administration and enforcement of the tax laws.

E.     That the Court enter an injunction requiring Defendants at their own expense:

    (1)    To send by email or certified mail, return receipt requested, a copy of the final injunction entered against them in this action—as well as a copy of the Complaint setting forth the allegations as to how they negligently, recklessly, or fraudulently prepared federal income tax returns—to each person for whom they prepared federal tax returns, other tax forms, or claims for refund after January 1, 2018;

    (2)    To turn over to the United States copies of all returns, other tax forms, and claims for refund that Defendants prepared after January 1, 2018;

    (3)    To surrender to the Secretary of the Treasury or his delegate any and all PTINs held by, assigned to, or used by Defendants pursuant to 26 U.S.C. § 6109, as well as any EFINs held by, assigned to, or used by them;

    (4)    To provide the United States a list of the names, Social Security numbers, addresses, phone numbers, and email addresses of each person for whom Defendants prepared tax returns, other tax forms, or claims for refund after January 1, 2018;

    (5)    To prominently post a copy of the injunction in Defendants' place of business where tax returns were prepared by them or their employees;

    (6)    To post for one year, on all social media accounts and websites used to advertise Defendants' tax preparation services, a statement that they have been enjoined from the preparation of tax returns and a hyperlink to any press release regarding the injunction that the Department of Justice may issue;

26

(7)    To deliver a copy of the injunction to Defendants' employees, contractors, and vendors;

(8)    To file a sworn statement with the Court evidencing Defendants' compliance with the foregoing directives within forty-five (45) days of entry of the final injunction in this action; and

(9)    To keep records of Defendants' compliance with the foregoing directives, which may be produced to the Court, if requested, or the United States pursuant to paragraph F, *infra*;

F.    That the Court enter an order allowing the United States to monitor Defendants' compliance with the injunction and to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure;

G.    That the Court ender an order, pursuant to 26 U.S.C. § 7402(a), requiring Defendants to disgorge to the United States the gross receipts (the amount of which is to be determined by the Court) that Defendants have obtained (in the form of fees subtracted from customers' tax refunds) for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims; and

H.    That the Court grant the United States such other and further relief as the Court deems appropriate.

Dated: January 9, 2020

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
Tax Division

By: s/ Robert S. Silverblatt
ROBERT S. SILVERBLATT
Virginia Bar Number 85506

U.S. Department of Justice
Trial Attorney, Tax Division
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-8682
Facsimile: (202) 514-9868
Robert.S.Silverblatt@usdoj.gov

Of Counsel:

MARIA CHAPA LOPEZ
United States Attorney

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| _____ | |
| *Plaintiff(s)* ) | |
| v.  ) | Civil Action No. |
| ) | |
| ) | |
| ) | |
| _____ | |
| *Defendant(s)* ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44  (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| United States | Catharine Harvey et al. |

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Hillsborough
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Robert Silverblatt, US DOJ Tax Division, PO Box 14198 Ben Franklin
Station, Washington, DC 20044
202-514-8682

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for  Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation - Transfer

☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
26 U.S.C. 7402
Brief description of cause:
Suit to enjoin tax return preparers and for disgorgement

| VII. REQUESTED IN COMPLAINT: | ☐  CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:   ☐ Yes  ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| | *[signature]* |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

 (b)   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

 (c)   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.